# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
January 29, 2021
Lyle W. Cayce
Clerk

No. 19-20752

AUDREY K. MILLER,

*Plaintiff—Appellant*,

*versus*

SAM HOUSTON STATE UNIVERSITY; TEXAS STATE UNIVERSITY SYSTEM,

*Defendants—Appellees*,

CONSOLIDATED WITH

No. 19-20753

AUDREY K. MILLER,

*Plaintiff—Appellant*,

*versus*

UNIVERSITY OF HOUSTON SYSTEM; UNIVERSITY OF HOUSTON DOWNTOWN,

*Defendants—Appellees*.

No. 19-20752
c/w No. 19-20753

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-2824
USDC No. 4:15-CV-2927

Before JOLLY, SOUTHWICK, and WILSON, *Circuit Judges*.
CORY T. WILSON, *Circuit Judge*:

A litigant has the fundamental right to fairness in every proceeding. Fairness is upheld by avoiding even the appearance of partiality. *See, e.g.*, *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). When a judge's actions stand at odds with these basic notions, we must act or suffer the loss of public confidence in our judicial system. "[J]ustice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954).

Audrey Miller sued Sam Houston State University (SHSU) and Texas State University System (TSUS) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.*, and the Equal Pay Act, 29 U.S.C. § 206(d), alleging sex discrimination, retaliation, and a hostile work environment. A week later, Miller filed a separate action against the University of Houston Downtown (UHD) and the University of Houston System (UHS), also under Title VII, alleging that UHD's denial of employment constituted retaliation.[1]

From the outset of these suits, the district judge's actions evinced a prejudgment of Miller's claims. At the beginning of the Initial Case Management Conference, the judge dismissed *sua sponte* Miller's claims against TSUS and UHS, countenancing no discussion regarding the dismissal. Later in the same conference, the judge responded to the parties'

---

[1] There are thirty-seven public universities in Texas; thirty-four universities belong to one of six state university systems. SHSU is a component of TSUS, and UHD belongs to UHS.

2

No. 19-20752
c/w No. 19-20753

opposition to consolidating Miller's two cases by telling Miller's counsel, "*I will get credit for closing two cases when I crush you. . . . How will that look on your record?*"

And things went downhill from there. The court summarily denied Miller's subsequent motion for reconsideration, denied Miller's repeated requests for leave to take discovery (including depositions of material witnesses), and eventually granted summary judgment in favor of SHSU and UHD, dismissing all claims. Miller now appeals the district court's rulings and asks for her cases to be reassigned on remand. Mindful of the fundamental right to fairness in every proceeding—both in fact, and in appearance, we REVERSE, REMAND, and direct that these cases be REASSIGNED to a new district judge for further proceedings.

## I.

### A.

Miller joined SHSU as a tenure-track Assistant Professor of Psychology in the University's Clinical Psychology Doctoral Program ("Clindoc Program") in the Department of Psychology and Philosophy in August 2007. In this position, Miller supervised students in the Clindoc Program, taught practicum courses, and served on students' dissertation and thesis committees. According to SHSU, Miller was "lacking in collaborative and attentive generosity towards her colleagues." She complained about her heavy workload, which she believed to be disproportionate compared to that of her colleagues. Miller also disagreed with other members of the faculty while serving on dissertation and thesis committees. She was removed from one committee due to her inflexibility and voluntarily offered to step down from another due to conflicts with other committee members. Miller contends these disagreements were retaliatory because of her sex and the complaints that she raised concerning her clinical workload.

No. 19-20752
c/w No. 19-20753

Despite these issues, Miller applied for tenure at SHSU in late 2012. But her reviewers recommended that Miller's tenure and promotion be denied due to her lack of collegiality. SHSU informed Miller of its decision to deny tenure on March 27, 2013.

Thereafter, Miller filed charges of sex discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission. She then utilized the Texas Public Information Act to obtain voluminous documentation from SHSU. A few months later, SHSU denied Miller a merit-based salary increase for the 2013-2014 academic year. Miller filed a formal grievance with SHSU, based on the same allegations as her EEOC charge (i.e., that her tenure decision was adversely affected by sex discrimination and retaliation). Miller's employment with SHSU ended on May 31, 2014.

**B**.

After learning of her tenure denial at SHSU, Miller applied for one of three open faculty positions at UHD. On March 17, 2014, she interviewed with the UHD search committee, as well as Department Chair Jeffery Jackson, Dean DoVeanna Fulton, and Provost Edward Hugetz. During the interview, search committee members asked Miller why SHSU denied her tenure. Miller responded that she "believed [she] had been denied tenure because [she] was a woman and because [she] had raised concerns about the mistreatment of women in the department at SHSU prior to applying for tenure." Following the interview, the committee rated Miller as the second highest candidate for a position.

On April 4, 2014, the UHD search chair emailed Department Chair Jackson and Dean Fulton and stated that the search committee was interested in extending offers to three candidates, including Miller. That same day, the search chair asked Miller if she would allow UHD to contact her SHSU

4

No. 19-20752
c/w No. 19-20753

Department Chair, Christopher Wilson.  Miller obliged but advised the search chair that Wilson was one of the individuals about whom she had complained at SHSU.

On April 7, Department Chair Jackson sent an email to the search chair.  He stated that while Dean Fulton seemed agreeable to the committee's recommendations, Fulton wanted to follow up with Miller's supervisors at SHSU.  The search chair responded that she was "worried [SHSU Department Chair Wilson would] have to be very careful [] discussing [Miller's] tenure denial because of the legal issues we [have] discussed."  Later that day, Jackson called Wilson to inquire into SHSU's decision to deny Miller tenure and promotion.

What was said during the phone call is nowhere in the record.  But after Department Chair Jackson's call with Department Chair Wilson, UHD reversed course from the search committee's previous recommendation, deciding not to extend Miller an offer of employment.  On April 29, Miller emailed the UHD search chair regarding the status of her UHD application.  The search chair responded that the position had been filled: "The final employment decision was complicated and involved the search committee, department chair, dean, and provost."

In the end, UHD filled all three open positions with candidates who scored lower on UHD's hiring metrics than Miller.  According to Dean Fulton, UHD's decision not to hire Miller was "based entirely on [] concerns regarding [] Miller's teaching and service due to her tenure denial at SHSU."  The dean further stated that she was never "made aware that [] Miller had filed a charge of discrimination or other complaint against SHSU with any federal or state authorities."  Miller later filed complaints against UHD with the EEOC and the Texas Workforce Commission.

No. 19-20752
c/w No. 19-20753

## C.

On September 28, 2015, Miller filed suit against SHSU and TSUS in the Southern District of Texas. On October 6, Miller filed a separate lawsuit against UHD and UHS in the same court. The district court issued an order to handle the suits jointly, but they were not formally consolidated.

From the start, the district court effectively stifled Miller's attempts at discovery. The day after Miller filed suit, the district court issued an Order of Conference in each action that limited discovery. The (identical) orders foreclosed the parties from propounding written discovery or noticing depositions "without court approval." The district court then issued an Order for Disclosure that mandated the parties' exchange of certain relevant documents in each case, including Miller's performance and personnel records, her pay records, names of relevant parties, and organizational charts. On the surface, the district court's initial discovery management orders were perhaps unremarkable. But the court did not stop there, as we discuss in greater detail below.

On January 25, 2016, the parties in both cases first met at a joint Initial Case Management Conference. At the outset, and without any prior notice, the district judge stated:

> THE COURT: [Miller], we've got four parties instead of the two.
>
> [Miller's counsel]: Oh. The –
>
> THE COURT: You sued the System[s] and the institution[s]. So, pick any two you want. I don't care.
>
> [Miller's counsel]: I am going to go with the Universities.
>
> THE COURT: Is that right?

6

No. 19-20752
c/w No. 19-20753

[Opposing counsel]: Yes, Your Honor. To be clear, you know, that was an issue that we were going to hope to resolve by –

THE COURT: I just did.

[Opposing counsel]: Yes, Your Honor.

THE COURT: We'll dismiss the Systems.

[Opposing counsel]: Thank you, Your Honor.

THE COURT: Systems don't do anything. They hire large staffs and go around and make life difficult for the actual institutions themselves. It's in their charter; annoy their workers.

As the conference continued, the district judge made several other off-key remarks, such as his thoughts concerning Miller's behavior: "Now, to be candid with you, . . . there is nothing that [Miller] didn't complain about. Anything anybody did for two and a half years, three years, was all for some ulterior motive." The judge also lumped Miller's claims in with preconceived notions from previous cases involving professors: "As near as I can tell, [Miller's] only complaint here is likely she was paid less but that she didn't get tenure." He then supported this statement by revealing his familiarity with Title VII cases: "I have never thought about it, but I have had more tenure decisions than you can imagine working here. You wouldn't think professors were litigious, but apparently they are."

The judge made other remarks that signaled a predisposition against Miller's claims. When Miller requested additional discovery, including the opportunity to take depositions, the district judge denied her request, noting that it was "too argumentative" and extensive. Finally, as the initial conference ended, the judge asked the parties if the cases should be consolidated. Contrary to the judge's apparent preference, the parties

7

No. 19-20752
c/w No. 19-20753

unanimously requested that the court keep the cases separate. The district judge replied to Miller's counsel, "All right. I will get credit for closing two cases when I crush you." Miller's counsel attempted to respond, but the judge interjected: "How will that look on your record?"

The day after the Initial Case Management Conference, the district court formally dismissed TSUS and UHS with prejudice. The court did not allow Miller to amend her complaints or otherwise respond prior to dismissing TSUS and UHS. Miller moved for reconsideration, arguing that the Systems were "responsible for managing and controlling their Universities."[2] The next day, before TSUS or UHS responded, the court denied Miller's motion, reasoning that Miller failed to supply "objective facts" in her complaint about the Systems' actions.

On April 13, 2016, Miller filed opposed motions for discovery. Miller sought, *inter alia*, performance records concerning tenure-track and tenured faculty members in the SHSU psychology department, pay records, and work assignments (i.e., course loads). Miller also sought applications and related communications from UHD regarding its employment decisions. The district court denied Miller's motions the following day, without response from SHSU or UHD.

The district court held a pretrial conference on May 4, 2016. There, the parties discussed the limited discovery that had been exchanged. The district judge asked the Universities' counsel if he had taken Miller's deposition and then permitted counsel to notice the deposition. Miller's counsel then asked, "May we take depositions as well?" The judge

---

[2] Miller only filed her motion for reconsideration in her action against SHSU and TSUS. However, the motion addressed both TSUS and UHS, and the district court ruled in regard to both parties. For the sake of simplicity, we likewise treat the motion for reconsideration as pertaining to Miller's claims against both TSUS and UHS.

No. 19-20752
c/w No. 19-20753

responded, "No." Afterwards, the court entered a Management Order that stated that SHSU and UHD "may depose Miller in Judge Hughes's Jury Room."

On May 12, Miller again filed opposed motions for leave to propound discovery, renewing her "request that in the interest of efficiency and economy, the court order the full scope of discovery that has been specifically requested by Plaintiff." Miller attached extensive discovery requests to the motions and stated that she had also "submitted the attached discovery requests . . . in document form during the last pretrial conference . . . held on May 4, 2016."

TSUS and UHD deposed Miller on May 25, while Miller's motions remained pending. The district judge actually attended parts of the deposition and participated. At one point, the judge admonished Miller:

> THE COURT: If you're unhappy with the rulings I've made about discovery, that's fine. Free Country. This is not a place to discuss your feelings. It's a place to answer [opposing counsel's] questions. You have sued his client – their – their clients' people, and they have a right to know exactly why.

Later, the judge again interjected:

> THE COURT: Ma'am, you're not to lecture the State of Texas on the law. [Your counsel] and I will do that. It is not important to your case what you think about what nine old people on the Potomac River talk about something. We're here to find out what you actually know . . . about the facts. So, please, do not burden the record with side trips.

9

No. 19-20752
c/w No. 19-20753

After the deposition, the district court held another hearing. Within the first minute of that hearing, the district judge queried TSUS and UHD's counsel: "So are you going to move for summary judgment?"—clearly implying that they should. And later, as Miller's counsel sought to explain why he believed that certain data provided by SHSU was inaccurate, the judge responded, "I think you're making that up."

Both SHSU and UHD moved for summary judgment in June 2016. By then, the court had yet to allow Miller to take any depositions. In response to the summary judgment motions, Miller requested a Rule 56(d) continuance, asking the court to grant discovery beyond the "general information provided by the Defendant[s]" under the court's original disclosure order. Miller also moved to strike certain declarations in each case. The court denied both Miller's Rule 56(d) discovery requests and her May 12 motions for leave to propound discovery.

On March 29, 2017, the district court held oral argument on the Universities' summary judgment motions. After the hearing (and after summary judgment briefing was complete), the court entered a Management Order that allowed Miller to depose Dean Fulton, but only "for two hours, at most."

Following Dean Fulton's deposition, Miller again moved for leave to conduct additional depositions in the UHD action. She requested permission to depose Department Chair Jackson and the UHD search chair and several search committee members. In support of her motion, Miller asserted that

> it [wa]s increasingly clear that Defendants have avoided testimony about the contents of the telephone reference from Wilson of SHSU, not only because of its obvious relevance in this case but also in an attempt to protect SHSU from liability for its own retaliatory actions. [Miller] should have an opportunity to depose Wilson of SHSU in this case.

No. 19-20752
c/w No. 19-20753

(emphasis in original). The district court again denied Miller's request, and on September 30, 2019, the court granted TSUS's and UHD's motions for summary judgment. Miller filed notices of appeal in both cases on October 30, 2019.

## II.

On appeal, Miller raises the following issues: (A) whether the district court erred by dismissing *sua sponte* her claims against TSUS and UHS; (B) whether the district court erred by denying her motion for reconsideration of that ruling; (C) whether the district court abused its discretion by denying her repeated discovery requests; and (D) whether the cases should be reassigned on remand. We address each issue in turn.

### A.

Miller first asserts that the district court erred by dismissing *sua sponte* her claims against TSUS and UHS. She contends that the court failed to provide her notice, an opportunity to respond, or the opportunity to allege her best case before dismissing the claims with prejudice. TSUS and UHS counter that the dismissal was fair. We review de novo. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1173 (5th Cir. 2006).

A district court may dismiss a complaint for failure to state a claim on its own motion "as long as the procedure is fair." *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (internal quotation marks and citation omitted). While there is no bright-line rule, generally "fairness in this context requires both notice of the court's intention and an opportunity to respond." *Id.* (citing *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007)); *see also Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th Cir. 2008). But "[w]e do not always require notice prior to *sua sponte* dismissal for failure to state a claim, as long as the plaintiff has alleged [her] best case." *Lozano*, 489 F.3d at 643 (internal quotation marks and

11

citation omitted). We have reasoned that "[a]t some point a court must decide that a plaintiff has had fair opportunity to make [her] case[, and] if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).

We have not ruled on a case with facts squarely aligned to the ones here, but we glean insight from our prior decisions. In *Carroll*, the defendant moved to dismiss a fraud claim under Rule 12(b)(6). *Carroll*, 470 F.3d at 1173. Although there were additional tort claims beyond the scope of the defendant's motion, the district court dismissed the case in its entirety without providing any specific reference to the remaining claims. *Id.* On appeal, this court found that the district court failed to provide notice or an opportunity to respond as to the tort claims pled in the plaintiff's complaint, and thus, the district court's dismissal "did not provide adequate fairness" to the plaintiff. *Id.* at 1177.

*Gaffney*, though nonprecedential, is likewise analogous. There, the plaintiffs sought damages against their insurer for failing to tender coverage payments. *Gaffney*, 294 F. App'x at 976. The plaintiffs later moved to transfer venue, continue the trial, and consolidate their case with a related case. *Id.* But after considering the motion, the court dismissed *sua sponte* the plaintiffs' claims, finding the plaintiffs had no cause of action. *Id.* As in *Carroll*, we held on appeal that the district court denied the plaintiffs both notice "that it might *sua sponte* dismiss their case and an opportunity to respond." *Id.* at 977. We also noted that "[t]here [wa]s no evidence in the record to suggest that the district court notified any party that it was considering dismissal, neither party briefed the issue, and [p]laintiffs were not given an opportunity to amend their complaint to cure any deficiencies that the district court thought warranted dismissal." *Id.*

No. 19-20752
c/w No. 19-20753

Finally, in *Davoodi*, the plaintiff filed suit in state court against his former employer, asserting claims of discrimination, retaliation, and intentional infliction of emotional distress. *Davoodi*, 755 F.3d at 308. Following removal to federal court, the defendant filed a partial motion to dismiss, seeking to dismiss all claims but one. *Id.* at 309. The district court granted the defendant's partial motion to dismiss and then dismissed *sua sponte* the plaintiff's remaining claim. *Id.* We reversed the district court's dismissal because the plaintiff "had no notice or opportunity to be heard before the district court issued its order of dismissal." *Id.* at 310.

Whether Miller received proper notice under the circumstances here is debatable. Similar to *Carroll* and *Davoodi*, nothing in the record suggests the district court notified the parties that it was considering dismissal of Miller's claims against TSUS or UHS before the court raised the issue at the beginning of the Initial Case Management Conference. To the contrary, as the conference began, the district judge simply demanded that Miller "pick any two [of the four parties] you want. I don't care." Once she did so, the court ruled on the spot: "We'll dismiss the Systems."

Even assuming that exchange constituted notice to Miller prior to the Systems' dismissal, the district court failed to give Miller an adequate opportunity to respond to the court's intention to dismiss her claims. The district court dismissed Miller's claims at the Initial Case Management Conference and memorialized the dismissal in an order entered a day later. The record provides no indication that any party briefed the issue until Miller moved for reconsideration. It is also notable that the district court dismissed TSUS and UHS with prejudice, so Miller was likewise not given any opportunity to amend her complaint to cure the deficiencies that ostensibly warranted dismissal of the Systems. "Dismissing an action after giving the plaintiff only one opportunity to state [her] case is ordinarily unjustified." *Jacquez*, 801 F.2d at 792; *see also Gaffney*, 294 F. App'x at 977.

13

Taking all of this into consideration, the district court failed to give Miller an adequate opportunity to respond before it dismissed her claims against TSUS and UHS with prejudice; accordingly, the court erred in its *sua sponte* dismissal of TSUS and UHS.[3]

**B.**

It follows that the district court likewise erred when it denied Miller's motion for reconsideration. So we need not tarry long on this issue, except to underscore a couple points. The first, succinctly, is that it was not a "fair procedure," as required for a *sua sponte* dismissal, for the court to force Miller to resort to a motion to reconsider—as a proxy for arguments she might have made before dismissal—as her only avenue to oppose the dismissal of her claims. *See Carroll*, 470 F.3d at 1177; *see also Gaffney*, 294 F. App'x at 977.

The second, less succinctly, is that the points raised in Miller's motion for reconsideration illuminate why dismissal of the Systems was premature under the fact-specific inquiry used to evaluate employment relationships, at least given the scant record before us. In her motion, Miller alleged that the Systems were her "employers" because they were "responsible for the control and management of their Universities," including personnel decisions and the granting of tenure. This court applies a two-step process for determining whether a defendant is an "employer" under Title VII. *E.g.*, *Deal v. State Farm Cnty. Mut. Ins. Co.*, 5 F.3d 117, 118 n.2 (5th Cir. 1993).[4] Relevant here, one component of this test is "[t]he right to control [the] employee's conduct." *Id.* at 119. And when examining the

---

[3] We also reject SHSU's and UHD's argument that Miller alleged her "best case" because she was not given a chance to amend her complaint. *Jacquez*, 801 F.2d at 792.

[4] Miller's claim against UHS (and UHD) is premised on "retaliation, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a)," as a *prospective* employer; however, the relevant test for determining whether a defendant is an "employer" is the same.

No. 19-20752
c/w No. 19-20753

control component, we have focused on whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the employee. *Id.* Another component focuses on the "economic realities" of the relationship, including "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.*

This test is "necessarily a fact-specific inquiry and is therefore typically applied in a summary judgment context, in which a court is permitted to go beyond the pleadings and examine the state law and the evidence relevant to the employment relationship." *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dept.*, 479 F.3d 377, 382 (5th Cir. 2007); *cf. Weeks v. Tex. A&M Univ. Sys. – at Galveston*, 762 F. App'x 203, 204–05 (5th Cir. 2019) (finding, at summary judgment stage, that plaintiff was not employed by the University System because "[i]t lacked the right to hire, fire, supervise, and set [his] work schedule; [and] it therefore could not be said to have the right to control [the plaintiff's] conduct").

By contrast, here, the district court's initial dismissal of TSUS and UHS apparently rested only on the district judge's own expressed view that "Systems don't do anything." The court's denial of Miller's motion for reconsideration, the day after she filed it, squelched any further development of Miller's allegations and arguments to the contrary (and any opposition to Miller's motion the Systems might have interposed). While there are cases in which a Rule 12(b)(6) dismissal may be appropriate, the district court's premature ruling here was "based on an erroneous view of the law or a clearly erroneous assessment of the evidence," *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 329 (5th Cir. 2017), such that it was an abuse of discretion.

15

No. 19-20752
c/w No. 19-20753

## C.

After its dismissal of TSUS and UHS and its denial of Miller's motion for reconsideration, the district court repeatedly denied Miller's requests for discovery, including her requests to depose witnesses with knowledge material to her claims. Miller asserts the district court abused its discretion in doing so. Based on our review of the record, we agree.

We review a district court's discovery rulings for an abuse of discretion. *Vantage Deepwater Co. v. Petrobras Am., Inc.*, 966 F.3d 361, 373 (5th Cir. 2020). Generally, broad discretion is afforded to the district court when deciding discovery matters. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011). We reverse "only if [the decision] affected a party's substantial rights." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 476 (5th Cir. 2018). Substantial rights are affected if the district court's decision was "arbitrary or clearly unreasonable." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005) (citation omitted).

Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense or proportional to the needs of the case . . . [.]" This standard is broad, especially when viewed in the context of Title VII. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir. 1983) ("The imposition of unnecessary limitations on discovery is especially frowned upon in Title VII cases.").

In support of her position, Miller refers us to *McCoy v. Energy XXI GOM, LLC*, 695 F. App'x 750 (5th Cir. 2017). In that case, the same district judge imposed substantially similar discovery restrictions to those imposed here. *Id.* at 753. Specifically, the district judge denied almost all requests for discovery and "permitted only the deposition of [the plaintiff]" and "the

16

No. 19-20752
c/w No. 19-20753

disclosure by the defendants of certain documents pertaining to the specific [object] at issue," certain photographs, and a video. *Id.* On appeal, we reversed and remanded the case on summary judgment grounds, finding genuine issues of material fact existed, even with the limited discovery that had been permitted. *Id.* at 758. But we also noted that "[t]he district court abused its discretion in refusing to allow [the plaintiff] to conduct sufficient discovery . . . to support the allegations he ha[d] fairly raised[.]" *Id.* at 759.

We have a sense of déjà vu. The district court's discovery restrictions in the instant cases are strikingly similar to those in *McCoy*. And "[a]lthough the district court is customarily accorded wide discretion in handling discovery matters, we will not uphold a ruling which has failed to adhere to the liberal spirit of the Rules." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). As in *McCoy*, the district judge here permitted only Miller's deposition to be taken before summary judgment briefing and argument—and then actually participated in the deposition. By contrast, the court repeatedly denied Miller the opportunity to depose *any witnesses*, relenting only after summary judgment briefing was complete to allow Miller one deposition, of UHD's Dean Fulton. And that deposition was limited to "two hours, at most."

To put it simply, the court's discovery restrictions suffocated any chance for Miller fairly to present her claims. While the Universities offer that Miller was not prejudiced because she had already received voluminous documentation from a pre-suit Texas Public Information Act request, we are not persuaded given the district court's inflexible denials of both her written discovery requests and her requests to take depositions. Miller requested discovery on multiple occasions and was denied, almost instantly, at every turn: January 25, 2016 (denied same day); April 13, 2016 (denied April 14, 2016); May 4, 2016 (denied same day); May 12, 2016 (denied June 30, 2016); and June 2, 2017 (denied via summary judgment September 30, 2019). Even

17

No. 19-20752
c/w No. 19-20753

given the deference afforded to district courts when deciding discovery matters, the restrictions here "failed to adhere to the liberal spirit of the Rules," *Coughlin*, 946 F.2d at 1159, to the extent that they were "arbitrary or clearly unreasonable." *Fielding*, 415 F.3d at 428 (citation omitted). Although we are never quick to second-guess a district court's management of discovery, we must do so here.

A final example demonstrates why. In her respective actions, Miller sought to depose SHSU's Department Chair Wilson and UHD's Department Chair Jackson, two witnesses who fairly likely have knowledge of facts highly relevant to Miller's claims in both cases. Among other interactions during UHD's hiring process, Jackson telephoned Wilson about Miller and purportedly discussed the reasons SHSU denied Miller tenure. After that call, UHD decided not to hire Miller, though she had been recommended for employment before the call. Because the district court denied Miller's repeated requests to depose these witnesses, the record is silent about this telephone call. Yet it is plain that Miller's claims may well hinge on what was said during the call.

"When a party is not given a full and fair opportunity to discover information essential to its opposition to summary judgment, the limitation on discovery is reversible error." *McCoy*, 695 F. App'x at 759 (quoting *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333 (5th Cir. 2002)). Miller has demonstrated that the district court's almost blanket denials of her discovery requests affected her substantial rights, including her ability to respond to the Universities' motions for summary judgment. Because the district court abused its discretion in this regard, we reverse the district court's summary judgments and remand these cases to allow Miller the opportunity to obtain discovery "relevant to any party's claim or defense or proportional to the needs of the case." Fed. R. Civ. P. 26(b).

No. 19-20752
c/w No. 19-20753

### D.

Lastly, Miller asks this court to reassign her cases. We find her request warranted.

The power to reassign "is an extraordinary one" and "is rarely invoked." *Johnson v. Sawyer*, 120 F.3d 1307, 1333 (5th Cir. 1997) (internal quotation marks and citation omitted). "[R]eassignments should be made infrequently and with great reluctance." *United States v. Winters*, 174 F.3d 478, 487 (5th Cir. 1999) (internal quotation marks and citation omitted).

In determining whether reassignment is proper, this court has applied two tests—one more lenient than the other. The more stringent test considers the following:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his mind or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*In re DaimlerChrysler Corp.*, 294 F.3d 697, 700–01 (5th Cir. 2002) (citations omitted). The more lenient test looks at whether the judge's role "might reasonably cause an objective observer to question [the judge's] impartiality." *Id.* at 701 (alteration in original) (quoting *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995)). Reassignment of Miller's cases is appropriate under either test.

Here, the district judge's conduct from the outset of Miller's cases "might[, at the least,] reasonably cause an objective observer to question [the judge's] impartiality." *Id.* Moreover, the cumulative weight of both prejudicial comments and peremptory rulings by the district judge leads us

19

to conclude that "the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his mind . . . previously-expressed views . . . [and that] reassignment is advisable to preserve the appearance of justice[.]" *Id.* at 700–01. Finally, we do not believe reassignment would disrupt judicial efficiency, particularly because full discovery has not yet occurred in either of Miller's actions. *See, e.g.*, *Johnson*, 120 F.3d at 1333 (reassigning case on remand after the completion of a jury trial).

### III.

Miller, like every litigant, is entitled to a full and fair opportunity to make her case in a fair and impartial forum. *See United States v. Jordan*, 49 F.3d 153, 155 (5th Cir. 1995). Beyond that, "fundamental to the judiciary is the public's confidence in the impartiality of our judges and the proceedings over which they preside." *Id.* "[J]ustice must satisfy the appearance of justice." *Offutt*, 348 U.S. at 14.

We REVERSE the district court's judgments, including its *sua sponte* Rule 12(b)(6) dismissal of TSUS and UHS and summary judgment in favor of SHSU and UHD, and REMAND for further proceedings. On remand, we further direct the Chief Judge of the Southern District of Texas to REASSIGN these cases.