**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **AUDREY K. MILLER** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| **v.** | § | **CIVIL ACTION NO.: 4:15-cv-02824** |
| | § | |
| **SAM HOUSTON STATE UNIVERSITY AND TEXAS STATE UNIVERISITY SYSTEM** | § | |
| | § | |
| | § | **JURY DEMANDED** |
| ***Defendants.*** | § | |

**PLAINTIFF'S MOTION FOR CONTINUANCE TO FILE AMENDED RESPONSE TO DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT**

AUDREY K. MILLER ("Miller"), by her Attorney of Record, Terrence B. Robinson, files this, *Plaintiff's Motion for Continuance to File Amended Response to Defendant's Motion for Summary Judgment*, requesting reasonable time for Plaintiff to incorporate discovery into an *Amended Response to Defendants' Amended Motion Summary Judgment*, in support of which Plaintiff shows the following:

1. On September 28, 2015, Plaintiff filed suit against SAM HOUSTON STATE UNIVERSITY ("SHSU") and the TEXAS STATE UNIVERSITY SYSTEM ("TSUS") for violations of Title VII of the Civil Rights Act of 1964, as amended (**42 U.S.C. §2000e *et seq.***)—including sex (gender) discrimination, culminating in Defendants' gender-based disparate treatment in denying Plaintiff's promotion and tenure ("PT") application; retaliation *per se*, including in denying Plaintiff's PT application and numerous other adverse actions because of Plaintiff's prior protected activities; a hostile work environment, including *quid pro quo*, based on sex (gender) and

retaliation; and discriminatory pay based on sex (gender) and retaliation, the former also violating the Equal Pay Act of 1963 (**29 U.S.C. §206d**). ECF No. 1.

2. On February 5, 2020, Plaintiff appealed dismissal by the prior district court, that of Judge Lynn Hughes ("Judge Hughes"), to the US Court of Appeals for the Fifth Circuit. On January 29, 2021, the Fifth Circuit reversed, remanded, and reassigned to the present Court, opining that Plaintiff had not received even an appearance of justice, as Judge Hughes exhibited obvious bias against Plaintiff and her Counsel including "stifling Miller's attempts at discovery." ECF No. 126 at 6 ¶¶ 2, 20 § III.

3. The Fifth Circuit elaborated Judge Hughes's abuse of discretion in repeatedly denying Plaintiff's discovery requests, specifically citing Plaintiff's May 12, 2016 *Motion for Leave to Propound Discovery* (ECF Nos. 55 to 55-4), and underscoring:

> Under **Federal Rule of Civil Procedure 26(b)**, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense or proportional to the needs of the case . . . [.]" This standard is broad, especially when viewed in the context of Title VII. ***Trevino v. Celanese Corp.***, 701 F.2d 397, 405 (5th Cir. 1983) ("The imposition of unnecessary limitations on discovery is especially frowned upon in Title VII cases"). ECF No. 126 at 11-15 § II(C).

4. Unfortunately, reasonable document discovery has continued to be hard to come by in the present Court. As shown in the record, for more than one decade, Plaintiff has requested *public* information pursuant to the **Texas Government Code, Chapter 552**, which requires Defendants' *prompt* responsiveness. Yet on September 11, 2014, TSUS Vice Chancellor and General Counsel Fernando Gomez ("TSUS Vice Chancellor/General Counsel Gomez") effectively terminated Plaintiff's right to this *public* information, through a so-called "litigation exception," expressly *because Miller had filed an EEOC charge*. ECF No. 82-5 at 1, 2, 3, 4, 8.

5. Thereafter, for more than eight years of litigation in this case, Defendants have refused to even identify, much less properly categorize, approximately 10,000 pages of piecemeal

and obviously incomplete document production (cf. ECF Nos. 55 to 55-4). Ex. 1. Discovery Hearing Transcript at 11:1-12:7, 17:5-12. Only because the Court instructed Defendants on October 19, 2023 to index these 10,000 pages (*id.* at 17:13-14) did Defendants on November 16, 2023 finally produce any identification whatsoever of their spotty, disorganized, and nonresponsive "offerings." Ex. 2. SHSU Discovery Log; Ex. 3. Miller Production Index.[1] During that hearing, Plaintiff's Counsel thanked the Court but foresaw that this indexing would not be sufficient and likely would be a mere first step in obtaining reliable document production from Defendants, with which the Court concurred:

> [T]ake a look at [the indexing], take a look at the documents they've given you; and if there is still a problem, we can talk about it…. If you still can't find what you've asked for with regard to that, with regard to specific requests, "Hey, we asked for the letter that terminated my client," okay, and if you can't find that, then, you know, let's make a specific list; and we'll work it out then.[2] Ex. 1. Discovery Hearing Transcript at 17:14-16.

6. True to the Court's instruction, Plaintiff immediately began reviewing Defendants' belated indexing vis-à-vis their 10,000 pages of piecemeal document production, diligently attempting to account for and resolve numerous missing documents Defendants claimed to have produced but that were missing from their document file. As such, Plaintiff had to seek these missing documents from Defendants, resulting in production, for example, of SHSU 008749 to SHSU 009645 on December 12, 2023, SHSU 009658 to SHSU 009726 on January 24, 2024, and 003517 to SHSU 003545 on January 31, 2024, just yesterday. This is not to mention many still-missing items that Defendants have not even yet purported to produce but that are *public* information, which they

---

[1] Defendants' indices purported that various documents were produced to Plaintiff as far back as 2016. Ex. 2. SHSU Discovery Log; Ex. 3. Miller Production Index. But even assuming the veracity of this dubious claim, Defendants have admitted their own inability to access or identify the files they produced in 2016, so this hardly could be reasonably expected of Plaintiff.

[2] Again, lists of discovery as such long ago were produced to Defendants and entered into the case record, namely with Plaintiff's March 12, 2016 *Motion for Leave to Propound Discovery* (ECF Nos. 55 to 55-4), denial of which the Fifth Circuit opined exemplified Judge Hughes's abuse of discretion in denying Plaintiff discovery. *Supra* ¶ 4.

were required to make and keep in the regular course of business pursuant to **Texas Government Code, Chapter 552**. Further, as clearly stated in SHSU's own Records Retentional Schedule, Defendants should have maintained such records indefinitely in this case:

> A state record whose retention period has expired may not be destroyed if any litigation, claim, negotiation, audit, public information request, administrative review, or other action involving the record is initiated; its destruction shall not occur until the completion of the action and the resolution of all issues that arise from it.
>
> A state record whose retention period expires during any litigation, claim, negotiation, audit, public information request, administrative review, or other action involving the record may not be destroyed until the completion of the action and the resolution of all issues that arise from it. Ex. 4. SHSU Records Retention Schedule at 3.

7. The overburdensome process of Plaintiff having to review and correct for Defendants' inept document production has occurred simultaneously with the requirement she prepare a fact-intensive *Response to Defendants' Motion for Summary Judgment* ("MSJ Response") for the Court, though yet without the benefit of reasonable time to carefully review and integrate any legitimate documentation Defendants may have produced, much less time to delineate and propound critical items still missing vis-à-vis ECF Nos. 55 to 55-4.

8. Defendants' intentional roadblocking of Plaintiff's access to document discovery over the course of more than one decade, including more than eight years into this litigation, is hardly a trivial issue. We elaborate here just one example to bring this clearly into focus: Needles found in the haystack of Defendants' December 12, 2023 document production included an email of February 5, 2013 sent by Rowland Miller ("Committees Chair Miller"), who in addition to being one of Plaintiff's primary harassers chaired *both* the Psychology Department Promotion and Tenure Advisory Committee ("DPTAC") and CHSS Dean's Advisory Committee on Promotion and Tenure ("CDACPT") that "considered" Plaintiff's PT application (ECF Nos. 74-1 ¶ 11(x), including his authoring Plaintiff's PT review letters from each of these committees (ECF No. 82-20 at 4, 9). His

email was written to all DPTAC members, a committee of ten tenured professors in the Psychology Department, including, in addition to Committees Chair Miller, Jeff Anastasi ("Anastasi"), Marc Boccaccini ("Boccaccini"), Director of Clinical Training Mary Alice Conroy ("DCT Conroy"), Donna Desforges ("Desforges"), Marsha Harman ("Harman"), Craig Henderson ("Henderson"), Stanley Kordinak ("Kordinak"), David Nelson ("Nelson"), and Ramona Noland ("Noland"). See list at ECF No. 82-20 at 1 ¶ 1. The email demonstrates that, even Committees Chair Miller and Department Chair Chris Wilson ("Dept. Chair Wilson"), the latter also one of Plaintiff's primary harassers, relentlessly pressured Plaintiff to submit her PT dossier well in advance of the deadline, by January 3, 2013 (ECF No. 74-1 ¶¶ 100-101), and yet Committees Chair Miller did not make Plaintiff's PT dossier accessible for DPTAC members' review until *three weeks later*, end of business on January 23, 2013, when he simultaneously rushed to convene a DPTAC meeting the following week to vote on Plaintiff's PT. Ex. 5. DPTAC Emails of Jan 23, 2013 to Feb 1, 2023 at 1-2.

9. In another email from the same chain, which Committees Chair Miller sent to DPTAC members on Wednesday January 30, 2013 (evening), he acknowledged missingness from Plaintiff's PT dossier he belatedly had made accessible to DPTAC members the review letters of four external experts, each of whom supported Plaintiff's PT bid. ECF Nos. 74-1 to 74-2 ¶¶ 6(xi), 7(v), 161. Not incidentally, we argue, Committees Chair Miller and other SHSU officials grossly misrepresented the contents of these external letters in their own letter documenting "consideration" of Plaintiff's PT candidacy. Compare to ECF No. 82-20. Further, by January 30, 2013, one week after Committees Chair Miller finally had given DPTAC members access to Plaintiff's PT dossier, and only two business days before the DPTAC's meeting to vote on Plaintiff's PT candidacy, "quite a few"

DPTAC members still had not examined her dossier. *Id.* Also, Boccaccini admitted some DPTAC members had reviewed Plaintiff's dossier "without checking it out… on the down low." *Id.*

10. An email from Harman of February 6, 2014, again copied to all DPTAC members, is at least as damning. It indicates that DPTAC members *impermissibly considered Plaintiff's protected complaints in evaluating her PT application*, with Harman's email expressly acknowledging that DPTAC members had reviewed Plaintiff's PT case in anticipation of a "lawsuit in which all of us likely will be named" and, as such, Harmon recommended that the DPTAC have TSUS Vice Chancellor/General Counsel Gomez review their letter. Ex. 6. DPTAC Email of Feb 6, 2014 at 1 ¶ 2. As Plaintiff long ago testified, "lawsuit" was SHSU officials' euphemism to express unfettered disdain for Plaintiff's protected activities, including her EEOC charge. See particularly ECF No. 74-1 ¶ 72, where Plaintiff testified that Dept. Chair Wilson mischaracterized her EEOC charge as a "lawsuit," audio recorded and explicit in the meeting transcript, ECF No. 82-3 at 32:7-20 (also see ECF Nos. 74-1 to 74-2 ¶¶ 73, 75, 182, 195, 200). In Harman's email to DPTAC members, she further advised which *ad hominem* attacks Committees Chair Miller had proposed for Plaintiff's PT review letter that she believed the DPTAC could, or could not, get away with in court. Ex. 6. DPTAC Email of Feb 6, 2014 at 1 ¶ 1. Desforges concurred, noting they also should consider how their language would sound to a jury. *Id.*

11. Also evident from Defendants' recent email productions—and long-ago inferred by Plaintiff based upon abundant circumstantial evidence, to which she previously testified—Committees Chair Miller and Dept. Chair Wilson improperly colluded to thwart Plaintiff's PT application, including, for example, Committees Chair Miller submitting a "DPTAC letter" for Wilson's consideration two days prior to receiving DPTAC members' approval for him to do so. Ex. 7. Miller-Wilson PT Collusion. Harman did not deliver her demonstrably retaliatory sentiments, for

example, until February 6, 2024; later that evening, these were incorporated by Committees Chair Miller into a "notable" revision of the DPTAC letter, which Nelson, in turn, did not approve for advancement through the process until February 7, 2014. Ex. 8. DPTAC Emails of Feb 6-7, 2014. Meanwhile, Committees Chair Miller willfully misrepresented his improper early submission of a "DPTAC letter" to DPTAC members, emailing them on February 6, 2013 at 6:29 PM stating, "We must submit it soon, but I don't want to do so without getting your thumbs up." But by then not only had Committees Chair Miller submitted his "DPTAC letter" to Dept. Chair Wilson, but Wilson already had emailed Committees Chair Miller two versions of his own letter recommending that Plaintiff not be granted tenure (ECF No. 82-20 at 4-7), the first on February 5, 2013 and the second the afternoon of February 6, 2013. Ex. 9. Wilson Emails of Feb 5-6, 2014 at 1 v. 2. As such, documentary evidence recently produced by Defendants confirms that Committees Chair Miller and Wilson improperly exchanged hostile evaluations of Plaintiff's PT case in violation of policies requiring thorough consideration of PT dossiers at each purportedly "independent" stage of evaluation. See ECF No. 74-1 at ¶ 124.

12. The critical nature of Defendants' document production, much of which again was only recently received by Plaintiff, underscores the necessity that Plaintiff motion the Court for leave to continue discovery, allowing adequate time for document discovery to be reviewed and incorporated into an *Amended Response to Defendants' Amended Motion for Summary Judgment*, particularly given Your Honor's assurance during the October 19, 2023 discovery hearing that Plaintiff would receive such consideration.

13. Finally, although this Court has allowed Plaintiff to depose material witnesses, she again has not yet had the opportunity to depose a particularly critical witness, Dept. Chair Wilson, whom the Fifth Circuit opined was "fairly likely to have knowledge of facts highly relevant to

Miller's claims." ECF No. 126 at 118 ¶ 2. II. As such, encompassed in Plaintiff's request for discovery continuance, she requests that the Court reconsider Plaintiff's requests to depose Wilson.

**Attachments:**

- Ex. 1. Discovery Hearing Transcript of Oct 19, 2023, excerpts (pp. 11, 12, 17)
- Ex. 2. SHSU Discovery Log
- Ex. 3. Miller Production Index
- Ex. 4. SHSU Records Retention Schedule
- Ex. 5. DPTAC Emails of Jan 23, 2013 to Feb 1, 2023 (SHSU-009220 to SHSU-009221)
- Ex. 6. DPTAC Emails of Feb 6, 2014 (SHSU-009225; SHSU-009250)
- Ex. 7. Miller-Wilson PT Collusion (SHSU-003970)
- Ex. 8. DPTAC Emails of Feb 6-7, 2014 (SHSU-009239)
- Ex. 9. Wilson Emails of Feb 5-6, 2014 (SHSU-009226; SHSU-009235)

## PRAYER

Therefore, Plaintiff asks the Court to grant Plaintiff's Motion for Continuance to file Plaintiff's Amended Response to Defendant's Amended Motion for Summary Judgment.

Respectfully Submitted,

TB Robinson Law Group, PLLC

Terrence B. Robinson, Attorney-In-Charge
Fed. Bar No: 14218
Texas Bar No. 17112900
Email: TRobinson@TBRobinsonlaw.com
7500 San Felipe St., Suite 800
Houston, Texas 77063
Telephone: (713) 568-1723
Facsimile: (713) 965-4288
**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

I certify that on January 23, 2024, counsel for Plaintiff conferred with Defendants' counsel via email regarding the subject of this motion. Counsel indicated that they are opposed to this Motion, or the relief requested herein.

Terrence B. Robinson

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of February 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorney(s) and/or parties of record, via the CM/ECF service.

Terrence B. Robinson