**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **AUDREY K. MILLER,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:15-cv-02824** |
| | § | **JURY DEMANDED** |
| | § | |
| **SAM HOUSTON STATE UNIVERSITY** | § | |
| **AND TEXAS STATE UNIVERSITY** | § | |
| **SYSTEM,** | § | |
| **Defendants.** | § | |

---

**AMENDED PROPOSED JOINT PRETRIAL ORDER**

---

1.      **Appearance of Counsel**

*Counsel for Plaintiff Audrey K. Miller*

Terrence B. Robinson, Attorney-In-Charge
Fed. Bar No: 14218
Texas Bar No: 17112900
Email: TRobinson@TBRobinsonlaw.com
7500 San Felipe St, #800
Houston, Texas 77063
Telephone: (713) 568-1723
Facsimile: (713) 965-4288

Laura A. Hernandez
Fed. Bar No: 2935637
Texas Bar No: 24100107
Email: LHernandez@laurahernandezlaw.com
7008 Capitol St.
Houston, Texas 77011
Telephone: (281) 784-0355
Facsimile: (281) 784-0356

Melody Carrier
Texas Bar No: 00785096
Email: mcarrier@caflawgroup.com
505 Orleans, Suite 505
Beaumont, Texas 77701

Telephone: (409) 833-1119
Facsimile: (409) 271-3690


*Counsel for Defendant Sam Houston State University*

Drew L. Harris, Attorney-In-Charge
Fed. Bar No: 1114798
Texas Bar No: 24057887
Email: drew.harris@oag.texas.gov

Joe Nwaokoro
Fed. Bar No: 30168
Texas Bar No: 24032916
Email: joe.nwaokoro@oag.texas.gov

GENERAL LITIGATION DIVISION
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 475-4225
Facsimile: (512) 320-0667


2.      **Statement of the Case**

*Plaintiff's Statement*: This is an employment discrimination case. Plaintiff, hired in 2007 as a tenure-track Assistant Professor in the Department of Psychology ("Department") at Sam Houston State University ("SHSU"), filed suit in 2015 against SHSU (and co-Defendant, Texas State University System ["TSUS"]), for violations of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e *et seq.*)—including Defendants' severe and pervasive hostile employment practices against her (and other women) based on gender discrimination, and retaliation for Plaintiff's prior complaints of gender discrimination and retaliation, each of which ultimately culminated in denial of Plaintiff's 2012 application for Promotion to Associate Professor with Tenure ("PT"), among other adverse actions.

During her tenure-track ("TT") period, 2007-2014, Plaintiff performed better than her male counterparts, but, like other women faculty, was persistently and pervasively treated less advantageously. Specifically, TT male professors received paid course releases; were assigned fewer doctoral, masters, and undergraduate students to supervise in clinical and research training; and were not demeaned and labeled "obstructionist" or "a crazy bitch,"

as Plaintiff and other women faculty were when they critiqued students' work. Despite exhibiting "excellent scholarship," having exceptionally positive student evaluations, and contributing to the department in numerous other ways, Plaintiff was denied PT based on alleged and pretextual "collegiality" concerns when, in fact she was denied PT because she complained of gender discrimination and retaliation.

Prior to her PT denial, Plaintiff had engaged in protected activities on numerous occasions, including having complained about gender-based disparities in the assignment of clinical supervision duties to Clinical Doctoral ("Clindoc") Program faculty, and in the treatment of Department faculty on student research committees, and about retaliation in the category of "collegiality" during her May 2012 performance review, immediately preceding her PT denial. Protected complaints were made repeatedly to multiple SHSU officials, including Mary Alice Conroy, then Clindoc Director of Clinical Training ("DCT") and Director of the Psychology Service Center ("PSC"), and Chris Wilson, then Department Chair; pre-PT denial protected complaints were also made, pursuant the SHSU grievance procedure, to John de Castro, then Dean of the College of Humanities and Social Sciences ("CHSS"), and Jaimie Hebert, then SHSU Provost and Vice President for Academic Affairs.

Plaintiff seeks back pay, front pay, attorneys' fees and costs, and compensation for all other damages arising from Defendant SHSU's invidious discrimination and retaliation and its myriad consequences (e.g., unpaid individual clinical supervision and other teaching overloads, assigned to Plaintiff substantially in excess of those to male counterparts; lost/denied benefits to Plaintiff while on the TT, including guaranteed startup funding and paid course releases, and outside paid employment opportunities, which were broadly lavished upon male counterparts; and out-of-pocket expenses due to the discriminatory and retaliatory PT denial and resulting unemployment/employment precarity, including psychological and medical expenses, lost merit pay and state leave, and superfluous mortgage/homeowner expenses).

- ***Defendant's Statement***: This is an employment discrimination case brought by a professor against a university. Plaintiff Audrey Miller asserts that she was wrongfully denied tenure by Defendant Sam Houston State University ("SHSU"). She asserts two claims in this trial: 1) that SHSU denied her tenure because of discrimination against her based on her gender, and 2) that SHSU denied her tenure because of retaliation for her complaining about gender discrimination. SHSU denies Miller's claims, and asserts she was denied tenure due to teaching and collegiality concerns that were documented in her tenure application paperwork.

3. **Jurisdiction**

- This Court has original jurisdiction of this case under 28 U.S.C. § 1331, arising under the laws of the United States and Title VII.

4. **Motions (Outstanding/Unresolved)**

- Motions in Limine (to be filed)

**5.    Contentions of the Parties**

- **Contentions of the Plaintiff**

A. Plaintiff, a woman hired by SHSU in 2007 as a TT Assistant Professor of Psychology in the Clindoc Program, encountered a workplace environment at SHSU that was consistently and pervasively hostile toward women, including, for example:

1. Discriminatory hiring and promotion practices, even after the Clindoc Program/Department had been warned about disadvantage to women in these domains through internal and external audits;

2. Statistically disadvantageous pay to women Departmental and Clindoc faculty;

3. Pervasive sexist remarks and conduct;

4. Derogated/undermined work and academic/professional opinions; and,

5. Gender-disparate harassment and punishment.

B. Plaintiff, like other women, was consistently and pervasively treated with hostility, and disadvantageously compared to male counterparts, including, but not limited to, in the following ways:

1. Denied paid course releases, even those guaranteed by her offer letter, which were lavishly granted to male faculty;

2. Expected to supervise a greater number of students in clinical and research training than male counterparts, with gender-based disparities particularly evident in individual clinical supervision workloads assigned by DCT Conroy; and,

3. Derogated and undermined for simply doing her job (e.g., critiquing students' research projects), just as other women faculty were derogated and undermined for simply doing their jobs (e.g., called "crazy bitch" and disappeared because of an earnest critical evaluation of a student), while male faculty engaged in same without derogation, undermine, or punishment.

C. Despite the foregoing, Plaintiff's official performance evaluations across her TT period (2007-2012) met or exceeded those of male Department and Clindoc faculty, and she was evaluated to have demonstrated "excellent scholarship," exceptionally positive student evaluations, remarkable student mentorship,

numerous service contributions to the Department, College, University, and Profession.

D. Prior to her PT application, however, Plaintiff had engaged in protected activities on numerous occasions, including having complained about gender-based disparities in the assignment of individual clinical supervision duties to Clindoc faculty, gender-based disparities in the treatment of faculty on student research committees, and retaliation under the pretext of "collegiality" criticisms, first made in Plaintiff's May 2012 performance review letter, immediately preceding her PT denial. Pre-PT denial protected complaints were made repeatedly to multiple SHSU officials, including DCT Conroy, Chair Wilson, Dean de Castro, and Provost Hebert.

E. After having been repeatedly threatened that she'd be subjected to a "hatchet job" PT review if she continued to engage in these protected activities, Plaintiff was in fact denied PT based on the fabricated "collegiality" concerns and various related demonstrable pretext. As such, Plaintiff contends she would not have been denied PT, or encountered various related adverse actions, but for her gender and statutorily protected gender-based complaints.

F. Further, multiple reviewers of Plaintiff's application at the departmental and college levels, have acknowledged animus within those committees consistent with gender discrimination and retaliation for Plaintiff's gender-based complaints.

G. Still further, objectively speaking, Plaintiff's PT review process was subject to myriad deviations from policy and practice, to which male candidates' PT reviews, which had been and continued to be consistently approved, were not subjected.

H. Finally, multiple reviewers of Plaintiff's PT application at the departmental and college levels, have testified or otherwise admitted to animus within those committees because of gender discrimination and retaliation for Plaintiff's gender-based complaints.

I. Because of SHSU's gender discrimination and retaliation culminating in a PT denial, Plaintiff has incurred 14 years of damages (2007-2024), including back pay, front pay, attorneys' fees and costs, and myriad other consequences (e.g., PTSD and breast cancer diagnoses, out-of-pocket medical costs because of lost insurance/benefits, career damage, lost merit pay and state leave, and superfluous mortgage/homeowner expenses).

J. Gender was a motivating factor in Plaintiff having been treated differently with respect to course releases, assignment of student work to oversee, her supervision of dissertation work, or the tenure process in violation of Title

VII.

K. Plaintiff made several complaints of Defendant's discriminatory practices including but not limited to complaints about the disparate numbers of course releases between her and male professors, and the disparate numbers of student assignments for individual oversight/supervision.

L. Plaintiff was denied tenure (an adverse employment action) after she complained about the gender disparities in workload (student assignments), course releases, and, among other factors, being labeled "obstructionist."

M. Plaintiff contends she gender was a motivating factor in her promotion and tenure denial in violation of Title VII.

N. Plaintiff contends she would not have been denied tenure but for her protected activity in violation of Title VII.

O. Plaintiff would not have been denied tenure in the absence of—in other words, but for her gender in violation of Title VII.

P. Defendant's proffered reason for the denial of tenure "collegiality" was pretextual.

Q. Defendant's violation of the Title VII was willful.

R. Plaintiff is entitled to compensatory and punitive damages based on her gender discrimination and/or retaliation claims brought under Title VII.

S. Plaintiff is entitled to back pay based on her gender discrimination and/or retaliation claims brought under Title VII.

**Contentions of Defendant**

- Plaintiff was considered for tenure in 2013. Her department voted 7-1 against recommending Plaintiff be awarded tenure. The Dean's Advisory Committee then voted 8-0 against recommending Plaintiff be awarded tenure. The chair, dean, and provost all recommended against Plaintiff being awarded tenure. Then SHSU President Dana Gibson Hoyt made the final decision not to award Plaintiff tenure.

- None of the people above based their decision on gender discrimination or retaliation. Instead, they based their decision on concerns about Plaintiff's teaching and collegiality, which were well-documented in Plaintiff's tenure application paperwork.

**6.     Admissions of Fact**

None.

**7.    Contested Issues of Fact**

    A.  The reasons why Plaintiff was denied a similar number of course releases as her male counterparts.

    B.  The reasons why Plaintiff was called "obstructionist" for critiquing dissertation work when her male counterparts were not for similar critiques.

    C.  The reasons why Plaintiff was assigned more students to supervise as compared to her male colleagues.

    D.  Whether Plaintiff engaged in protected activity when she asked that a statement encouraging women and minorities to apply be added to a draft job advertisement.

    E.  Whether Plaintiff engaged in protected activity when Plaintiff pushed that a female candidate be interviewed for the open position in 2012.

    F.  Whether Plaintiff engaged in protected activity when she complained about gender disparities following her 2012 review citing "collegiality" concerns.

    G.  The reasons why Plaintiff was denied tenure.

    H.  The reasons why Plaintiff's tenure denial because she is female was intentional/willful or in "good faith."

    I.  Plaintiff would not have been treated differently concerning course releases, assignment of student work to oversee, her supervision of dissertation work, or the tenure process but for her gender in violation of Title VII.

**8.    Agreed Propositions of Law**

The parties agree that Defendant is subject to Title VII as a matter of law.

**9.    Contested Propositions of Law**

- The Parties disagree about the applicable legal analysis in this Title VII gender discrimination case. Plaintiff contends the appropriate analysis is a mixed-motives legal analysis while Defendant contends it is a but-for causation standard.

**10.    Exhibits**

- Plaintiff's Exhibit List is attached hereto as  Exhibit "A."

- Defendant's Exhibit List is attached hereto as Exhibit "E."

**11.    Witnesses**

- Plaintiff's Witness List is attached hereto as  Exhibit "B."

- Defendant's Witness List is attached hereto as Exhibit "F."

If any other witnesses will be called to trial, their names, addresses and subject matter of their testimony will be reported to opposing counsel as soon as they are known.  This restriction will not apply to rebuttal or impeachment witnesses, the necessity of whose testimony cannot reasonably be anticipated before trial.

**12.    Settlement**

The parties participated in a full-day mediation on August 14, 2024, without success.  This case will need to be tried to a jury.

**13.    Trial**
- The parties anticipate the length of trial to be five (5) days.

**14.    Attachments**
- Plaintiff's Proposed Voir Dire Questions are attached as Exhibit "C."
- Defendant's Proposed Voir Dire Questions is attached hereto as Exhibit "G."
- Plaintiff's Proposed Jury Charge is attached as Exhibit "D."
- Defendant's Proposed Jury Charge is attached hereto as Exhibit "H."

Approved:

**TB ROBINSON LAW GROUP, PLLC**

_____

**Counsel for Plaintiff**


**DREW L. HARRIS**

_/s/ Drew L. Harris_____
  **Counsel for Defendant**